UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD ALLEN JOHNSON,

        Petitioner,

                                    CASE NO. 2:10-cv-14347

v.                                JUDGE GEORGE CARAM STEEH
                                    MAGISTRATE JUDGE PAUL KOMIVES

THOMAS BIRKETT,

        Respondent.

_____/

**REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION
(docket #1) and RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (docket #8)**

I.    <u>RECOMMENDATION</u>: The Court should conclude that petitioner's habeas application is untimely pursuant to 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion for summary judgment and dismiss the petition. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural Background*

    Petitioner Ronald Allen Johnson is a state prisoner, serving various concurrent sentences (the most severe of which involve terms of 18-40 years' imprisonment) imposed as a result of his 2003 state court convictions for assault with intent to rob, conspiracy to commit armed robbery, home invasion, and firearms offenses. Petitioner's application and the state court record reveal the following time line of the state court proceedings:

       •    Petitioner was convicted in November 2003, following a jury trial in the Saginaw County Circuit Court. On February 9, 2004, he was sentenced by the court.

       •    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, claims of improper joinder, denial of a lesser offense instruction, and

improper sentencing. On March 10, 2005, the court of appeals affirmed petitioner's convictions but remanded for resentencing or for the trial court to articulate substantial and compelling reasons for departing from the sentencing guidelines. *See People v. Johnson*, No. 253943, 2005 WL 562814 (Mich. Ct. App. Mar. 10, 2005) (per curiam).

• The trial court resentenced petitioner on April 18, 2005. Petitioner again appealed as of right to the Michigan Court of Appeals, challenging the trial court's new sentences. On September 28, 2006, the court of appeals affirmed petitioner's sentences. *See People v. Johnson*, No. 262415, 2006 WL 2787875 (Mich. Ct. App. Sept. 28, 2006) (per curiam).

• Petitioner filed a *pro se* application for leave to appeal in the Michigan Supreme Court, raising a number of claims challenging both his convictions and sentences, including claims that had not been raised in the court of appeals. On February 27, 2007, the Supreme Court denied leave to appeal in a standard order. *See People v. Johnson*, 477 Mich. 1033, 727 N.W.2d 612.

• On April 16, 2008, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508. The trial court denied the motion on November 14, 2008.

• Petitioner filed an application for leave to appeal the trial court's decision. On October 16, 2009, the court of appeals denied petitioner's application in a standard order. *See People v. Johnson*, No. 292019 (Mich. Ct. App. Oct. 16, 2009). Petitioner did not appeal this decision to the Michigan Supreme Court.

On October 18, 2010, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Respondent filed a motion for summary judgment on May 6, 2011, arguing that petitioner's habeas application is untimely. Petitioner filed a response to the motion on July 28, 2011. For the reasons that follow, the Court should grant respondent's motion for summary judgment and, accordingly, should deny petitioner's motions.

───────────────────────

[1]Although petitioner's application is file-stamped October 29, 2010, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Petitioner's application is signed and dated October 18, 2010. Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on October 18, 2010.

B.      *Analysis*

1.      *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions.  On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996).  In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions.  Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[2]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run.  Assuming that the default commencement date established by subparagraph (A) applies here, petitioner's application is untimely.  Under subparagraph (A) of §

_____

[2]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1).  *See* 28 U.S.C. § 2255 para. 6.  Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
>
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, petitioner's direct appeal concluded with the Michigan Supreme Court's denial of his application for leave to appeal on February 27, 2007. Petitioner's conviction became final 90 days later when the time for seeking *certiorari* in the United States Supreme Court expired, or on May 28, 2007. Thus, the one year limitation period began running on May 29, 2007, *see* FED. R. CIV. P. 6(a)(1)(A), and expired one year later on May 29, 2008. Because petitioner did not file his petition until October 18, 2010, it is untimely unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly

4

filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Here, petitioner filed a motion for relief from judgment on April 16, 2008. By this time, 303 days on the limitations clock had elapsed, leaving 62 days remaining. The Michigan Court of Appeals denied his application for leave to appeal on October 16, 2009. Petitioner then had 56 days in which to file an application for leave to appeal in the Michigan Supreme Court. *See* MICH. CT. R. 7.302(C)(3). The clock therefore started to run again on December 12, 2009.[3] It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.). Thus, petitioner then had 62 days in which to file his habeas application. However, petitioner did not file his application until over ten months later, on October 18, 2010. Thus, his application is untimely

---

[3]Because petitioner did not actually file an application for leave to appeal, it would seem that he no longer had an application for post-conviction review "pending" once the Michigan Court of Appeals denied his application for leave to appeal under the ordinary understanding of the word "pending." And in *Lawrence v. Florida*, 549 U.S. 327 (2007), the Court noted that § 2244(d)(2) does not use the same language as the commencement provision in § 2244(d)(1)(A), which speaks directly to the time for seeking direct review. *See id.* at 333-34. Nevertheless, the Sixth Circuit has repeatedly held that tolling under § 2244(d)(2) includes the time in which further review could have been sought, even if it was not in fact sought. *See Abela v. Martin*, 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc), *overruled in part by Lawrence*, 549 U.S. at 332-34; *Martin v. Wilson*, 110 Fed. Appx. 488, 490 (6th Cir. 2004); *Gravitt v. Tyszkiewicz*, 35 Fed. Appx. 116, 118 (6th Cir. 2000). Although *Lawrence* partially overruled the rule set forth in *Abela*, it did so only in concluding that a petition for certiorari in the United States Supreme Court does not constitute a "State" application for post-conviction review, and thus neither the time for seeking *certiorari* nor the time in which a petition for *certiorari* is actually pending is tolled under § 2244(d)(2). *Lawrence* did not address whether the time for seeking further state court review tolls the limitations period even where no further review is actually sought. Although the language of *Lawrence* suggests that the Supreme Court might take a different view of the matter than the Sixth Circuit if presented with the question, this language is insufficient to ignore binding Sixth Circuit law that has not been overruled. Accordingly, the Court should conclude that petitioner is entitled to tolling for the 56 days in which he could have filed an application for leave to appeal in the Michigan Supreme Court.

by nearly eight months.  Accordingly, the Court should conclude that petitioner's application is untimely.

C.      *Petitioner's Arguments*

With the exception of claiming that he is entitled to tolling under § 2244(d)(2) for the time in which he could have appealed to the Michigan Supreme Court in connection with his motion for relief from judgment, an argument which as explained above does not render petitioner's application timely, petitioner does not contest the foregoing calculation of the limitation period.  Rather, he contends that his petition should be deemed timely because he is entitled to a delayed starting of the limitations period, that he is entitled to equitable tolling, and that he is actually innocent.  The Court should reject each of these arguments.

1.      *Delayed Commencement*

Petitioner contends that he is entitled to a delayed commencement of the limitations period based both on a state created impediment to filing and based on the discovery of new evidence.  The Court should conclude that petitioner is not entitled to delayed commencement on either basis.  Importantly, in applying the delayed commencement provisions set forth in § 2244(d)(1)(B)-(D), a court must apply a claim-by-claim approach.  *See Souliotes v. Evans*, 622 F.3d 1173, 1179-80 (9th Cir. 2010); *Fielder v. Varner*, 379 F.3d 113, 117-20 (3d Cir. 2004); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (emphasis added) (explaining, in dicta, that § 2244(d)(1) "provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), *but three others that require claim-by-claim consideration*, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).");  *Ege v. Yukins*, 485 F.3d 364, 373 (6th Cir. 2007) (explaining, in applying §

6

2244(d)(1)(D), that "[w]e must analyze Ege's two habeas claims separately with regard to . . . the section 2244(d)(1) bar."). Thus, the question here is whether petitioner is entitled to delayed commencement of the limitations period with respect to each claim asserted in the petition.

### a. State Created Impediment

Petitioner first contends that he is entitled to a delayed commencement of the limitations period under § 2244(d)(1)(B) based on a state created impediment to filing. Specifically, he contends that the Michigan Department of Corrections (MDOC) impeded his ability to file his habeas application because, pursuant to MDOC policy, he is not eligible for legal writing assistance, and the MDOC has discontinued its legal agreement system which allows prisoner-to-prisoner legal assistance. If correct, petitioner's argument would apply to each claim in the petition. Nevertheless, the Court should conclude that petitioner's argument fails to establish his entitlement to delayed commencement under § 2244(d)(1)(B).

"In order to invoke § 2244(d)(1)(B), the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). "'Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.'" *Winkfield v. Bagley*, 66 Fed. Appx. 578, 583 (6th Cir. 2003) (quoting *Dunker v. Bissonnette*, 154 F. Supp. 2d 95, 105 (D. Mass. 2001). Thus, to invoke this provision a petitioner must "'allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitations period expired." *Winfield*, 66 Fed. Appx. at 583 (quoting *Neuendorf v. Graves*, 110 F. Supp. 2d 1144, 1153 (N.D. Iowa 2000) (internal quotation omitted)). As another court has explained: "Section 2244(d)(1)(B) pertains only to state-imposed impediments

that prevent prisoners from filing a *federal* petition for a writ of habeas corpus. [Petitioner] cites no authority–nor has the court's own research revealed any–to support the conclusion that an impediment to filing a petition for review in state court constitutes an impediment to filing a federal habeas petition, within the meaning of section 2244(d)(1)(B)." *United States ex rel. Willhite v. Walls*, 241 F. Supp. 2d 882, 886-87 (N.D. Ill. 2003). Further, as noted above, in order to be entitled to the benefit of § 2244(d)(1)(B), petitioner must show not only that the state created an impediment to the filing of his petition, but also that the impediment was itself unconstitutional. *See Dunker*, 154 F. Supp. 2d at 104-05.

Here, petitioner cannot show that he is entitled to invoke the delayed starting provision of § 2244(d)(1)(B) for two reasons. First, petitioner claims that the state has canceled its legal assistance program and has not afforded him the assistance of a legal writer, conditions which still exist at this time. It is therefore apparent that he was able to file his habeas application notwithstanding the state's failure to provide this assistance. Thus, the allegedly unconstitutional state action did not constitute an "impediment" to the filing of his habeas application. "The filing of the instant [petition] before the removal of the alleged impediment suggests that the government action did not prevent [petitioner] from filing the action." *United States v. Tamfu*, No. 3:99-CR-0279-P(01), 2002 WL 31452410, at *3 (N.D. Tex. Oct. 5, 2002); *see also*, *United States v. Moore*, 38 Fed. Appx. 185, 186 (4th Cir. 2002) (per curiam) ("Moore noted that he has not received the materials he requested, yet he filed his motion and did not state that his motion was incomplete or provide any reason why he ended his wait."); *Taranto v. Robinson*, No. 00-CV-72742, 2001 WL 739546, at *3 (E.D. Mich. May 31, 2001) (Cleland, J.); *Neuendorf*, 110 F. Supp. 2d at 1153.

Second, petitioner cannot show that the MDOC's failure to provide him legal assistance

8

amounted to an unconstitutional impediment to filing. The Constitution does not guarantee prisoners "an abstract, freestanding right to a law library or legal assistance," but only a "right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). Thus, the denial of legal assistance alone does not amount to an unconstitutional impediment to filing. *See Harvey v. Addison*, 390 Fed. Appx. 840, 842 (10th Cir. 2010); *Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007); *Smith v. Newland*, 48 Fed. Appx. 233, 234 (9th Cir. 2002). Because petitioner has failed to show that the alleged impediment was unconstitutional and actually impeded him from filing his habeas application, he is not entitled to delayed commencement under § 2244(d)(1)(B).

### b. Discovery of Factual Predicate

Petitioner also contends that he is entitled to a delayed commencement of the limitations period under § 2244(d)(1)(D) based on the belated discovery of the factual predicate of his claims. This provision requires a court to review the factual predicate of petitioner's claims and determine whether they could have been discovered prior to when his conviction became final. It "does not postpone the accrual of limitations based on a *pro se* litigant's or an attorney's belated discovery or realization of the legal consequences of known facts. Rather, postponed accrual is in order only if the facts themselves supporting a legal claim were undiscoverable in a timely fashion, despite due diligence." *Fraser v. United States*, 47 F. Supp. 2d 629, 630 (D. Md. 1999). In short, the operative inquiry is whether the facts themselves, rather than the legal import of or evidence supporting them, could not have been discovered through the exercise of reasonable diligence. *See United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (Gadola, J.); *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 745 (E.D. Wis. 2000). As the Fifth Circuit has explained,

"[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998); *accord Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001). Petitioner bears the burden of establishing his entitlement to delayed commencement under § 2244(d)(1)(D). *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (Gadola, J.). To meet this burden, petitioner must "specify how the factual predicate of his claims could not have been discovered earlier" and "indicate what steps, if any, he took to discover these claims." *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750 (E.D. Mich. 2002) (Roberts, J.).

As one court has observed, "[t]his provision . . . runs from the date a petitioner [or movant] is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim." *Youngblood v. Greiner*, No. 97 Civ. 3289(DLC), 1998 WL 720681, at *4 n.4 (S.D.N.Y. Oct. 13, 1998). And, as the Fifth Circuit has explained, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998); *accord Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001).

Petitioner's claim for delayed commencement under § 2244(d)(1)(D) is based on the affidavit of his co-defendant, David Barker. In his affidavit, Barker avers that he told both his counsel and the police, and testified at the preliminary examination, that petitioner was not one of the people with him at the time of the crime. This affidavit was executed on May 22, 2007, although petitioner contends that he did not receive the affidavit until January 2008. The Court should conclude that this affidavit does entitle petitioner to delayed commencement of the limitations period, for three

10

reasons.

First, the affidavit does not establish the factual predicate for any claim asserted in petitioner's habeas application.  The affidavit does nothing more than attempt to establish petitioner's innocence of the crimes for which he was convicted.  Such newly discovered evidence does not, standing alone, provide a basis for habeas relief.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits.") (emphasis added).  And Barker's affidavit has no bearing on the claims actually asserted in the petition, which consist of:  (1) improper denial of a separate trial; (2) failure to instruct on a lesser included offense; and (3) improper sentencing.  Thus, Barker's affidavit does not provide the "factual predicate" for any of the claims asserted in the petition.

Second, petitioner provides no basis for concluding that the factual predicate of his claim was unknown to him earlier.  Although petitioner may not have had Barker's affidavit in his possession, as noted above the relevant question is when petitioner knew the facts in support of his claims, not when he had the evidence in his possession to support his claims.  Petitioner knew the extent of his involvement, if any, at the time of his arrest, and he knew of Barker's assertions that he was not with Barker at the time of the crimes.  Barker stated as much at the arraignment, at which petitioner was present.  *See* Arraignment Tr., dated 12/17/01, at 6.  Even without Barker's affidavits, the facts upon which petitioner relies were well known to petitioner at the time of trial.  As noted above, it is

11

immaterial that petitioner may not have understood the legal import of those facts or had evidence to support his claim.  Because petitioner had available to him all of the facts necessary to support his claims, there is no basis for invoking § 2244(d)(1)(D) to delay the commencement of the limitations period.  *See Owens v. Boyd*, 235 F.3d 356, 359-60 (7th Cir. 2001).

Third, even if the relevant date is the date on which petitioner obtained Barker's affidavit, petitioner does not explain why he could not have obtained that affidavit sooner.  As explained above, Barker's initial statement that petitioner was not present with him at the time of the arraignment was well known to petitioner, and the affidavit itself is dated May 22, 2007, shortly after petitioner's direct review concluded.  It is petitioner's burden to "specify how the factual predicate of his claims could not have been discovered earlier" and "indicate what steps, if any, he took to discover these claims."  *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750 (E.D. Mich. 2002) (Roberts, J.).  Petitioner has failed to meet this burden.  For these three reasons, the Court should conclude that petitioner is not entitled to a delayed commencement of the limitations period under § 2244(d)(1)(D).

2.    *Equitable Tolling*

Petitioner also contends that he is entitled to equitable tolling of the limitations period based on his lack of knowledge of the law and his mental impairment.  The Court should reject this argument.

The habeas limitations provision set forth in § 2244(d) "is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).  To be entitled to equitable tolling of the limitations period, petitioner "must show '(1) that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely

12

filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)); *see also*, *Holland*, 130 S. Ct. at 2562. "The petitioner bears the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). Importantly, diligence alone is not sufficient; petitioner must also show that some extraordinary circumstance prevented him from timely filing his petition. *See Mathis v. Thaler*, 616 F.3d 461, 474-76 (5th Cir. 2010) (petitioner not entitled to equitable tolling even though he had acted diligently).

Neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (Rosen, J.). Thus, petitioner is not entitled to equitable tolling on this basis.

Petitioner's mental impairments, if sufficiently severe to have prevented him from filing his habeas petition, may provide a legally sufficient basis for equitable tolling of the limitations period. *See Brown v. McKee*, 232 F. Supp. 2d 761, 767-68 (E.D. Mich. 2002); *cf. Gray v. Potter*, 115 Fed. Appx. 891, 894 (7th Cir. 2004) ("A plaintiff whose mental or physical impairment prevents her from complying with the statute of limitations may invoke equitable tolling."). However, the mere existence of a mental impairment does not provide a basis for equitable tolling. "[M]ental incompetence is not a per se reason to toll a statute of limitations." *McSwain v. Davis*, 287 Fed. Appx. 450, 456 (6th Cir. 2008). Rather, "petitioner has the burden to show that these health problems rendered him unable to pursue his rights during the one-year time period." *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y.2000); *see also*, *McSwain*, 287 Fed. Appx. at 456 ("In

13

order to be entitled to equitable tolling the petitioner must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected her ability to file a timely habeas petition."); *Brown*, 232 F. Supp. 2d at 768; *cf. Zillyette v. Capital One Financial Corp.*, 1 F. Supp. 2d 1435, 1441 (M.D. Fla. 1998) ("[M]ental incompetency will toll the filing period only upon the demonstration of exceptional circumstances which would lead the court to conclude that Plaintiff could not have pursued her claim in a timely manner."), *aff'd*, 179 F.3d 1337 (11th Cir. 1999); *Moody v. Bayliner Marine Corp.*, 664 F. Supp. 232, 237 (E.D.N.C. 1987) (equitable tolling available only when plaintiff is so incapacitated that he was "incapable of filing any claim within the requisite time periods.").

Here, petitioner has failed to show that his mental condition affected his ability to timely file his habeas petition. First, the evidence of mental impairment provided by petitioner does not of its own force suggest a mental impairment sufficiently severe to prevent petitioner from timely filing his habeas application. Petitioner contends that he has a "mental incapacity" as a result of "being shot in the head several years ago," and that he "has been placed on Elavil to help him maintain mental stability, and to cope with pain." Pet'r's Resp., at 7. Petitioner contends that Elavil has "extreme side effects." *Id*. Petitioner does not, however, provide any information about what precisely or how severe the alleged mental impairment is, nor does he allege what side effects of the medication he is actually suffering. Notably, the potential side effects of Elavil consist mostly of physical side effects. The only psychological side effects noted are severe confusion and hallucinations, which occur "rarely" when the medication causes serotonin syndrome or neuroleptic malignant syndrome. *See id*., Att. B. Petitioner does not allege that he suffers from any type of severe cognitive deficits which would prevent a prisoner from timely filing a habeas petition.

14

Second, despite petitioner's alleged mental incapacity, he pursued a number of state post-conviction remedies, filing a motion for relief from judgment and an appeal from the trial court's decision, as well as his federal habeas petition. Thus, "the record evidence indicates [petitioner] was able to pursue both direct and collateral challenges to [his] conviction in the state courts notwithstanding [his] mental illness." *McSwain*, 287 Fed. Appx. at 457 (citing *Bilbrey v. Douglas*, 124 Fed. Appx. 971, 973 (6th Cir. 2005) (disallowing equitable tolling on the basis of mental incapacity where the habeas petitioner had pursued state court litigation even during the periods when her mental condition was the most impaired); *Price v. Lewis*, 119 Fed. Appx. 725, 726-27 (6th Cir.2005) (disallowing equitable tolling based on mental illness where the habeas petitioner had actively pursued his claims during the limitations period)); *see also*, *Brown*, 232 F. Supp. 2d at 768. Accordingly, the Court should conclude that petitioner is not entitled to equitable tolling of the limitations period.

3.      *Actual Innocence*

Finally, petitioner contends that he is actually innocent of the charges against him, and thus is entitled to have his claims considered on the merits. The Court should reject this argument.

The Sixth Circuit has held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 598-602 (6th Cir. 2005). In order to be entitled to the actual innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more

15

likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted).  It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist.  *See id*. at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.").  "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").  *See generally*, *Souter*, 395 F.3d at 589-90.

Here, petitioner has failed to provide the type of new, reliable evidence necessary to show his actual innocence.  An affidavit from petitioner's co-defendant, who himself is serving a significant term of imprisonment imposed as a result of his conviction on the same charges, does not constitute the type of reliable evidence required by *Schlup*.  Post-trial affidavits which seek to exonerate a petitioner and shift the blame for the crime to another person are "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993); *see also Byrd v. Collins*, 209 F.3d 486, 508 n. 16 (6th Cir. 2000).  This is particularly true where, as here, the affiant is himself serving a long prison term, reducing the threat of criminal penalty or other sanction which would attach to his statement to render it credible.  *Cf. In re Byrd*, 269 F.3d 561, 574 (6th Cir. 2001).

As accurately summarized by the prosecution in its brief to the Michigan Court of Appeals, the evidence at trial showed

> that in the early morning hours of December 14, 2001, Sherry Williams was at her home located at 2311 Hazelwood in the City of Saginaw.  Sherry Williams'

daughter, Lakenya and Lakenya's 4-year old son, were with her in a bedroom watching a movie. (T III 52-54; T V 6-10)  Sherry's son, Terrence, and a friend Antoine Hampton were in a bedroom behind the garage on the other side of the breezeway from the main part of the house.  (T IV 7-9; Ex 26) Shortly after midnight, three men broke into the Williams' home by kicking in a door to the kitchen that came off the breezeway that connected to the home's garage. (T V 10-11) All three men were black and wore dark clothes.  One wore a black ski mask. One, who had braided hair, wore a red bandana/scarf, brandished a large handgun, and demanded money.  One wore a beige or tan bandana/scarf, brandished a small handgun, and demanded money.  (T III 54-60, 65, 73, 77-78; T V 9-17, 24-26, 40, 58-61; Ex 26) Sherry ran into a bathroom, got on her knees and started praying. Sherry was dragged by her hair from the bathroom into the living room.  Lakenya and her son were also directed into the living room.  The masked men pointed guns at the two women and the child.  They demanded to know where the money was, asked if there were any drugs in the house and asked for Terrence.  While the beige scarved man stood by the three victims and the other two men searched the house. (T III 57-60, 85-86; T V 12-18)  The beige scarf man stated several times, I should kill you all.  After searching the house and finding no money, the three men leave stood [sic] in the breezeway.  Sherry and Lakenya heard the statement, "go back and finish them off."  (T III 60-61, 64; T V 18-19, 52-54) The beige scarved man came back inside still holding a gun, looked at them and said he "should have killed" them. He then left again.  (T III 61)

Sherry's son Terrence called the police from his cell phone.  (T V 39)

As the beige masked gunman walked from the victim's residence, Officer Foerster approached and observed him with the handgun, tackled and arrested him. Defendant David Barker was revealed to be the gunman with the beige or tan scarf around his face.  (T III 61-63, 66, 108-109, 113-117; T IV 15-16; T V 19-20) After Defendant Barker was tackled, a small, loaded revolver - .22 caliber was seized from underneath him.  (T IV 15-17, 51)

As officers initially responded to the crime scene, they observed two people, who appeared to be black males, run from the scene at 2311 Hazelwood, through an adjacent lot to the west of 2312 Collingwood.  (T III 118-120, 126, 140; T IV 9-13) Officer Hernandez arrived in the area to assist other officers and saw two people, near a garage on Maplewood, who then ran across Morris Street.  (T IV 52-56, 68-70)  Hazelwood, Collingwood, and Maplewood run parallel to each other in that order.  Morris Street runs perpendicular to all three of those streets.  (Ex 1; T IV 52-55)

Upon searching the area near the scene, officers found a black ski mask near footprints coming from the crime scene, in the lot on Collingwood adjacent to the crime scene.  (T III 118-119) At 2424 Maplewood, officers found a black sweatshirt and coat, near the garage, as well as two read bandanas wrapped around a .357 pistol with five live rounds.  (T III 173-178; T IV 59-63, 71-72)

An officer found Defendant Johnson, a black male, hiding on the ground at 2530 Maplewood.  (T IV 57-58, 151)

17

Another officer found Defendant Williams, a black male, hiding in the bushes at 2418 Morris.  (T IV 56, 116-118)

A search of the rest of the block did not reveal any additional persons out or hiding in the area.  (T IV 58, 150-152)

The shoes worn by Defendants Johnson and Williams were seized and submitted to the crime laboratory.  (T V 73-77) Expert laboratory scientist, David Stephens, examined the shoes and compared them to prints found at the scene and areas where evidence was found and determined that:

-Defendant Johnson's shoes had a similar size and pattern to a set of footprints found at 2312 Collingwood;

-Defendant Williams' shoes had a similar size and pattern to other footprints at 2312 Collingwood and at 2424 Maplewood.  (T VII 11-29, 43)

Examination of hairs from inside the ski mask revealed that the hairs were similar in all microscopic characteristics examined to the known head hair samples from Defendant Johnson and therefore could have come from him.  (T VII 48-49)

DNA testing revealed:

-a statistical match to Defendant Johnson's DNA on the black hooded-sweatshirt found at 2424 Maplewood; and

-a statistical match to Defendant Williams' DNA on one red bandana found at 2424 Maplewood.  (T VII 30-36, 91-96, 102-113)

Pl.-Appellee's Br. on Appeal, in *People v. Johnson*, No. 253943 (Mich. Ct. App.), at 2-4.  Thus, the evidence showed that petitioner was found hiding in the area where two of the three perpetrators had fled; that shoe prints consistent with petitioner's shoes were found in the area of the robbery and the area where clothing had been abandoned by the perpetrators; that hair consistent with petitioner's was found in the ski mask recovered by the police; and that DNA matching petitioner's DNA was found in the black hooded sweatshirt that had been abandoned by one of the perpetrators.  Given the inherent credibility problems with Barker's affidavit and this significant evidence of petitioner's involvement in the crime, Barker's affidavit does not meet the high threshold of showing "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted).  Accordingly, the Court should conclude that petitioner has failed to establish his actual innocence sufficient to overcome

18

the statute of limitations.

D.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

19

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's ruling on the procedural question is reasonably debatable. Petitioner does not dispute that his claims are untimely under § 2244(d)(1)(A). Further, it is not reasonably debatable that petitioner has failed to establish entitlement to a delayed commencement of the limitations period under § 2244(d)(1)(B) or (D). As explained above, petitioner has failed to show that the alleged impediment was unconstitutional or actually impeded his ability to file his habeas application. Likewise, petitioner's newly discovered evidence does not provide the factual predicate for any of the claims asserted in the petition, and in any event although he may not have had Barker's affidavit, the underlying facts set forth in the affidavit were known to petitioner at the time of trial. It is also not reasonably debatable that petitioner has failed to show that he suffers from a significant mental impairment preventing him from timely filing his petition that would justify equitable tolling of the limitations period. Finally, it is not reasonable debatable that petitioner has failed to meet the heavy burden of demonstrating his actual innocence through new, reliable evidence, because the Barker affidavit is not reliable and is insufficient to call into question the evidence of petitioner's involvement presented at trial. Accordingly, the Court should deny petitioner a certificate of appealability.

C.      *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should grant respondent's motion for summary judgment, deny petitioner's motions for summary judgment and to expunge unconstitutional arrest, and dismiss the petition. If the Court accepts this recommendation, the Court should also deny the certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 9/8/11


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and   by electronic means or U.S. Mail on September 8,  2011.
>
>                    s/Eddrey Butts
>                    Case Manager